IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| REZELL ALSTON, IV, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:23CV517 |
| | ) | 1:18CR181-1 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 48) and motion to amend the Section 2255 Motion (Docket Entry 53 ("Motion to Amend")).[1] For the reasons that follow, the Court should deny the Section 2255 Motion, as amended.

INTRODUCTION

The Court (per United States District Judge William L. Osteen, Jr.) previously entered a Judgment against Petitioner imposing, inter alia, a prison term of 84 months, after Petitioner pleaded guilty to possessing firearms as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (See Docket Entry 33 (Judgment) at 1-2; see also Docket Entry 1 (Indictment); Docket

[1] Parenthetical citations refer to Petitioner's above-captioned criminal case.

Entry 14 (Plea Agreement); Docket Entry 37 (Plea Hr'g Tr.); Docket Entry 40 (Sent'g Hr'g Tr.).)[2] Petitioner appealed (see Docket Entry 48, ¶ 8), but the United States Court of Appeals for the Fourth Circuit "affirm[ed] the [Court's J]udgment," United States v. Alston, No. 19-4070, 2022 WL 313843, at *5 (4th Cir. Feb. 2, 2022) (unpublished).

Thereafter, Petitioner did not seek certiorari review in the United States Supreme Court (see Docket Entry 48, ¶ 9(g)), but did timely file the Section 2255 Motion, which alleges the following four grounds for relief:

> 1) "[c]onviction violates the Sixth Amendment because trial counsel had a conflict of interest" (id., ¶ 12(GROUND ONE)), in that, during "the hearing on [Petitioner's] motion for new counsel, [trial counsel] acted to defend his own professional reputation and contrary to [Petitioner's] interests" and "told the [C]ourt that he believed the [four-level] enhancement [under U.S.S.G. § 2K2.1(b)(6)(B)] had merit" (id., ¶ 12(GROUND ONE)(a); see also id. at 13-15 (containing additional supporting facts and arguments));
>
> 2) "[i]neffective assistance of trial counsel in the pre-trial, guilty-plea negotiation, and guilty-plea phases" (id., ¶ 12(GROUND TWO)), in that trial counsel "never informed [Petitioner] of the law in relation to the facts of the [G]overnment's case or possible defenses[,]" "failed to conduct legal research or investigate the [G]overnment's evidence[,]" "coerced [Petitioner] into pleading guilty[,]" and "never investigated or informed [Petitioner] about [a motion to suppress]" (id., ¶ 12(GROUND TWO)(a); see also id. at 15-20 (setting forth further supporting facts and arguments));
>
> 3) "[i]neffective assistance for failing to raise Fourth Amendment challenges to the felony stop and search of the

[2] Docket Entry page citations utilize the CM/ECF footer's pagination.

vehicle" (id., ¶ 12(GROUND THREE); see also id. at 20-27 (providing more supporting facts and arguments)); and

4) "[i]neffective assistance of counsel in the sentencing phase" (id., ¶ 12(GROUND FOUR)), in that "[t]rial counsel failed to challenge the 4-level enhancement for committing the North Carolina felony of assault with a deadly weapon inflicting serious injury," "failed to challenge the [G]overnment witness's false testimony about the partial tag[,]" and "failed to conduct legal research and investigation or raise other legal and factual challenges to [the] Guidelines sentencing range calculation" (id., ¶ 12(GROUND FOUR)(a); see also id. at 27-31 (relaying additional supporting facts and arguments)).

Prior to the Government's response to the Section 2255 Motion, Petitioner submitted the Motion to Amend (Docket Entry 53), seeking to add a fifth ground for relief alleging "[p]rosecutorial misconduct[,]" in that "[t]he [Government] allowed misleading and false testimony [at the sentencing hearing] to stand and failed to correct it" (id. at 1). Thereafter, the Government responded to the Section 2255 Motion and opposed the Motion to Amend (Docket Entry 54 ("Response"); see also Docket Entry 54-1 (trial counsel's Affidavit)), whereupon Petitioner replied (Docket Entry 58 ("Reply").

DISCUSSION

Petitioner possessed a federal constitutional right to effective assistance of counsel in his criminal case in this Court. See U.S. Const. amend. VI; McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). To establish an ineffective assistance claim, Petitioner must show that his counsel's performance fell below a

reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687–94 (1984). "Surmounting Strickland's high bar is never an easy task . . . . [T]he standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also United States v. Galloway, 749 F.3d 238, 241 (4th Cir. 2014) ("To meet th[e prejudice] element of an ineffective assistance claim, [the defendant] would have to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair or unreliable." (internal quotation marks omitted)). Moreover,

> in order to prove prejudice in the guilty plea context, a person challenging his conviction must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." The Supreme Court has specified, furthermore, that such an individual "must convince the court" that such a decision "would have been [objectively] rational under the circumstances."

United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (internal citations omitted) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985), and Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). As the following discussion makes clear, Petitioner has established neither any such unreasonable performance nor resulting prejudice.

## Ground One

Ground One asserts that Petitioner's "[c]onviction violates the Sixth Amendment because trial counsel had a conflict of interest." (Docket Entry 48, ¶ 12(GROUND ONE).) More specifically, Petitioner contends that "[he] moved for new counsel to be appointed" based on "alleg[ations] that trial counsel had been ineffective, had a conflict of interest, and had engaged in serious misconduct." (Id.) In particular, those allegations included that trial counsel "coerced [Petitioner] into pleading guilty and signing the plea agreement, failed to inform [Petitioner] of the law in relation to the facts of the [G]overnment's case against [him] before [he] pleaded guilty, [and] threatened [Petitioner] that if [he] did not sign that same day, [he] would be forced to go to trial the next week[.]" (Id.) Petitioner further maintains that, "[i]n the hearing on [Petitioner's] motion for new counsel, [his trial counsel] acted to defend his own professional reputation and contrary to [Petitioner's] interests" by "argu[ing] that [Petitioner] was simply unhappy with a 4-level enhancement [under U.S.S.G. § 2K2.1(b)(6)(B)]," "told the [C]ourt that [trial counsel] believed the enhancement had merit[,]" and "went out of his way to address one of [Petitioner's] allegations of a conflict of interest - that [his trial counsel] had a close relationship with the son of the

primary investigator - [but] never denied the other allegations." (Id.)

According to Petitioner, "[his] circumstances are similar to those in [United States v. Glover], 8 F.4th 239 [(4th Cir. 2021)]" (id.), in that, "[l]ike *Glover*, [his trial] counsel brought [Petitioner] the plea agreement three days before [his] scheduled court date . . . telling [him] that [he] either signed the plea that day or [he] was forced to go to trial the followin[g] week." (Id. at 13 (internal quotation marks omitted).) Petitioner further contends as follows:

> While [his trial counsel] acknowledged that he had *received* the [G]overnment's discovery, he never denied [Petitioner's] claim that [trial counsel] had not informed [Petitioner] about the [G]overnment's case and any possible defenses before [he] pleaded guilty . . . .
>
> [Trial c]ounsel explained to the [C]ourt that he had not followed up on a Fourth Amendment motion to suppress [Petitioner] had asked for because "in [trial counsel's] professional judgment, there was no merit to that motion because there were active warrants that had been issued." . . . [T]he motion to suppress did have merit. In defending his reputation, [trial] counsel also informed the [C]ourt that he believed that there was merit to the 4-level sentencing enhancement [Petitioner] had wanted to challenge . . . . [Trial c]ounsel's clear interest was in defending his own reputation. Later in the hearing, he went out of his way to assure the [ C]ourt that he had not violated the [C]ourt's local rules by providing [Petitioner] with copies of the [G]overnment's discovery. . . .
>
> At the hearing, counsel for the [G]overnment also spoke in defense of [Petitioner's] trial counsel. Government counsel reassured the [ C]ourt that [Petitioner's trial counsel] was an experienced defense attorney and emphasized that [he] had provided effective assistance. . . .

> The [C]ourt denied [Petitioner's] motion [for new counsel] and made it clear that[,] if [Petitioner] ever complained about the circumstances of [his] guilty plea or [his] lawyer again, [he] could face a "five-level swing" in [his] sentence. At the hearing, [he] was on [his] own against [his] appointed [trial counsel], the [G]overnment, and the [Court].

(Id. at 13-15 (underscoring in original); see also Docket Entry 58 at 7-11.) For the reasons that follow, Ground One fails as a matter of law.[3]

Petitioner's "argu[ment] that his attorney was impaired by a conflict of interest at his [motion for new counsel] hearing . . . implicates whether [Petitioner]'s [trial] counsel was constitutionally effective." Glover, 8 F.4th at 246; see also Cuyler v. Sullivan, 446 U.S. 335, 349–50 (1980) (holding that actual conflict of interest renders counsel constitutionally ineffective). To establish ineffective assistance based on a conflict of interest, Petitioner must show "that (1) [his] lawyer operated under a 'conflict of interest' and (2) such conflict 'adversely affected his lawyer's performance.'" United States v. Nicholson, 611 F.3d 191, 206 (4th Cir. 2010) (quoting Cuyler, 446

---

[3] Because Petitioner has raised in Ground Two an ineffective assistance claim based on the same allegations raised in Ground One that trial counsel coerced Petitioner to plead guilty, failed to discuss the case and/or discovery, and failed to file a motion to suppress (compare Docket Entry 48, ¶ 12(GROUND ONE)(a), with, id., ¶ 12(GROUND TWO)(a)), the undersigned will (consistent with Petitioner's interpretation of Ground One in the Reply (see Docket Entry 58 at 7-11)) address in the discussion of Ground One Petitioner's allegations that trial counsel's conduct at the hearing on Petitioner's motion for new counsel and relationship with a family member of a arresting officer (and sentencing hearing witness) showed a conflict of interest, and address Petitioner's remaining allegations of deficient performance in the context of Ground Two.

U.S. at 348). "[C]onflicts [can] arise when a lawyer must choose between representing a client's interests and implicating h[im]self in h[is] own serious misconduct[, as l]awyers 'cannot reasonably be expected to make' arguments advancing a client's claim that, in essence, 'denigrate their own performance.'" Glover, 8 F.4th at 246-47 (quoting Christeson v. Roper, 574 U.S. 373, 378 (2015)). However, speculative or bare assertions of a conflict of interest do not suffice to support a claim of ineffective assistance. See United States v. Soldevila-Lopez, 17 F.3d 480, 487 (1st Cir. 1994).

Glover's facts clearly distinguish that case from the facts at issue here. In that case, trial counsel made improper statements directly against the petitioner's interests during a hearing on the petitioner's motion to withdraw a guilty plea, such as that trial counsel "did not endorse" the motion, the "Rule 11 [colloquy wa]s perfectly well done," the motion to withdraw the guilty plea "[wa]s not in [the petitioner's] best interest," "there were reasons that [trial counsel] believed the plea agreement was very favorable to [the petitioner, and] that those reasons were related at least in part to fact development in the case[,] and that he was not 'surprised' that [the petitioner] had agreed to the plea deal." Glover, 8 F.4th at 244 (emphasis added). Moreover, the petitioner alleged that trial counsel had acted to protect his own interests, because he had failed to prepare for the suppression hearing scheduled for the next day and wanted the petitioner to plead

guilty to avoid exposing trial counsel's lack of preparation. See id. at 243. Notably, absent a finding that trial counsel had a conflict of interest, the petitioner in Glover would face the prospect of either proceeding to sentencing or to trial with trial counsel who had made statements adverse to the petitioner to the court and who had an ongoing incentive to downplay trial counsel's own missteps. See id. at 247-49.

Here, Petitioner put trial counsel's actions at issue by moving for new counsel. Trial counsel, by necessity, had to address Petitioner's allegations and tell the Court what had transpired during the representation, e.g., that he had not filed a motion to suppress because the arresting officers had based the stop and search of the vehicle on active felony warrants and a be-on-the-lookout ("BOLO") for Petitioner (see Docket Entry 38 at 22). Unlike Glover, trial counsel's statement that he did not believe grounds existed for a motion to suppress would not adversely impact Petitioner going forward at sentencing, as Petitioner had already pleaded guilty and did not move to withdraw his plea and, thus, the opportunity to pursue a motion to suppress had long passed. See United States v. Moree, 220 F.2d 65, 69, 71 (2d Cir. 2000) (noting that court "declined to adopt a broad rule that would give a defendant the unilateral power to establish a 'conflict of interest' simply by expressing dissatisfaction with his attorney's performance" (citations and internal quotation omitted)); United

States v. Green, No. 3:12CR193, 2013 WL 6230091, at *1 (D. Conn. Dec. 2, 2013) (unpublished) ("Merely complaining about one's counsel does not create a conflict . . . .").

Moreover, trial counsel did not inform the Court at the hearing on Petitioner's motion for new counsel that trial counsel thought the four-level enhancement under USSG 2K2.1(b)(6)(B) had merit; rather, he merely observed that, given the Government's allegations in the Factual Basis regarding Petitioner's involvement in a shooting hours before he was found in possession of the two firearms, trial counsel was not surprised that the United States Probation Office had recommended that enhancement. (See Docket Entry 38 at 3.) Moreover, trial counsel vigorously attacked the applicability of that enhancement at sentencing (see Docket Entry 40 at 18-25, 41-48, 57-65) and, although the Court ultimately applied the enhancement, the Court noted that it did not believe Petitioner intended to kill or seriously injure the victim (see id. at 76, 84), and varied downward from the Guidelines range to a sentence the Court would have imposed in the absence of the enhancement (see id. at 85, 87).

Furthermore, Petitioner's claim that trial counsel's friendship with the father of Corporal Sturm (who assisted with Petitioner's arrest on the instant charge (see Docket Entry 40 at 50-57)) amounted to a conflict of interest qualifies as speculative, unsupported, and conclusory. Petitioner made no

attempt to show how such a relationship adversely impacted his trial counsel's performance in any way. (See Docket Entry 48, ¶ 12(GROUND ONE)(a); see also id. at 13-15; Docket Entry 58 at 7-11.) Thus, such a claim "is vague, conclusory, speculative, and unsupported and fails for all of these reasons," Cabrera v. United States, Nos. 1:09CR323-1, 1:12CV695, 2014 WL 6386902, at *9 (M.D.N.C. Nov. 14, 2014) (unpublished) (Osteen, Jr., C.J.); see also United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[A] habeas petition is expected to state facts that point to a real possibility of constitutional error . . . . Thus, vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (internal quotation marks omitted)); Whitley v. United States, Nos. 1:03CR445, 1:12CV67, 2014 WL 4443295, at *6 n.1 (M.D.N.C. Sept. 9, 2014) (unpublished) (recommendation of Webster, M.J., adopted by Beaty, S.J.) ("Unsupported, conclusory allegations do not warrant an evidentiary hearing, much less relief. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *abrog'n on other grounds recog'd*, *Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999).").

Next, contrary to Petitioner's allegations, trial counsel did not act counter to Petitioner's interests by informing the Court that trial counsel did not provide Petitioner with copies of certain police reports (see Docket Entry 38 at 19), as Petitioner had just told the Court he had copies of some police reports (see

id. at 16). Thus, trial counsel merely clarified for the Court that he had not provided those documents to Petitioner in violation of the applicable rules. (See id. at 19.) Similarly, the Government's attorney did nothing improper by informing the Court about his experience with trial counsel during the discovery and plea negotiation process. (See id. at 17-19.) He merely provided information responsive to the allegations in Petitioner's motion for new counsel.

Petitioner's complaint about the Court's warnings that Petitioner's conflicting statements under oath at the plea hearing and the hearing on his motion for new counsel could jeopardize his entitlement to acceptance of responsibility and/or subject him to increased punishment for obstruction of justice (see Docket Entry 48 at 14-15) fares no better. As an initial matter, the Court clearly can and should caution Petitioner that making statements contrary to those he made under oath during his Rule 11 colloquy could jeopardize his adjustment for acceptance of responsibility and open up the possibility of an obstruction of justice enhancement. See Morgan v. United States, No. 1:18CR31, 2022 WL 3702030, at *8 (N.D.W. Va. Aug. 26, 2022) (unpublished) ("[W]hile a defendant's guilty plea and truthful admission of his offense conduct is 'significant evidence of acceptance of responsibility,' it can be outweighed by inconsistent conduct." (quoting U.S.S.G. § 3E1.1, cmt. n.3). Moreover, Petitioner "allege[d on direct appeal]

that the [ C]ourt's repeated warnings during the hearing on the motion to substitute counsel were cumulatively overbearing. However, considering the totality of the circumstances, including the fact that [Petitioner] was permitted to speak at length about his concerns, the thoroughness of the [ C]ourt's inquiry, and [Petitioner]'s admission that he and [his trial] counsel were still communicating, [the Fourth Circuit] conclude[d] that any error was harmless." Alston, 2022 WL 313843, at *3 n.5. In any event, the Court's remarks clearly do not support Petitioner's claim that his trial counsel had a conflict of interest.

In conclusion, Ground One fails to establish a conflict of interest by Petitioner's trial counsel and, thus, fails to show ineffective assistance of trial counsel.

Ground Two

Via Ground Two, Petitioner alleges "[i]neffective assistance of trial counsel in the pre-trial, guilty-plea negotiation, and guilty-plea phases" (Docket Entry 48, ¶ 12(GROUND TWO)), in that trial counsel "never informed [Petitioner] of the law in relation to the facts of the [G]overnment's case or possible defenses[,]" "failed to conduct legal research or investigate the [G]overnment's evidence[,]" "coerced [Petitioner] into pleading guilty[,]" and "never investigated or informed [Petitioner] about [a motion to suppress]" (id., ¶ 12(GROUND TWO)(a)). Petitioner further faults his trial counsel for "wrongly stat[ing to the Court during the

plea hearing] that [Petitioner] only objected to the facts [in the Factual Basis] involving the alleged assault on January 12[, 2018,]" and "stat[ing] that [Petitioner] admitted that there were arrest warrants and the [be-on-the-lookout ('BOLO')]," because Petitioner agreed only with "the fact that [he] had the firearm [sic]," and "did[ not] admit to any other element of the [Section 922(g)(1)] offense." (Docket Entry 48 at 19-20.) Petitioner additionally emphasizes that "he spoke up at least six times during [the] guilty plea proceeding[,] . . . but the [Court] told [him] to talk to his trial counsel]." (Id. at 20 (emphasis in original).) In Petitioner's view, "[i]f [he] had been informed about the true nature of the law in relation to the facts of the [G]overnment's case and any possible defenses - including the Fourth Amendment challenges . . ., [he] would have chosen to go to trial." (Id.) Contrary to those contentions, Petitioner has demonstrated neither deficient performance by his trial counsel, nor resulting prejudice, as the following discussion makes clear.

As the Government correctly notes, "while Petitioner [] casts [Ground Two] as [an] ineffective assistance of counsel claim[], much of the underlying basis of his allegations - that his guilty plea was unknowing and involuntary - has been litigated on direct appeal." (Docket Entry 54 at 11 (citing Alston, 2022 WL 313843, at *3).) In that regard, the Fourth Circuit ruled as follows on that issue:

[Petitioner] claims that his guilty plea was unknowing and involuntary because he was pressured into pleading guilty, was not adequately informed about the law and facts of his case, and did not understand the consequences of the plea. These claims are belied by the record. During the Rule 11 hearing, [Petitioner] attested that he had reviewed the [I]ndictment with his attorney; understood the charge against him; was fully satisfied with the services of his attorney; understood the consequences of pleading guilty; and was pleading guilty because he was, in fact, guilty. Each of these statements is granted a presumption of truthfulness, [*United States v.* ]*Moussaoui*, 591 F.3d [263,] 278[ (4th Cir. 2010)], and [Petitioner] has not presented any evidence to rebut this presumption. Furthermore, a review of the plea transcript reveals that the [ C]ourt fully complied with Rule 11. This, too, "raises a strong presumption that the plea is final and binding." *United States v. Walker*, 934 F.3d 375, 377 n.1 (4th Cir. 2019) (internal quotation marks omitted).

[Petitioner] correctly points out that he hesitated or asked questions multiple times during the Rule 11 hearing. However, on each of those occasions, the [ C]ourt provided [Petitioner] with an opportunity to consult with [his trial] counsel and then circled back to ensure that [Petitioner] understood the issue and did not have any more questions. And, on each occasion, [Petitioner] ultimately attested that he understood. Nothing occurred to suggest that [Petitioner] was incompetent, dissatisfied with [his trial] counsel, or confused about the nature of the charge. Accordingly, the mere fact that [Petitioner] hesitated or asked questions is far from the "clear and convincing evidence" required to undermine the sworn statements he made during the Rule 11 hearing. *See Fields*[ *v. Attorney Gen'l*], 956 F.2d [1290,] 1299[ (4th Cir. 1992)].

[Petitioner] also contends that his guilty plea was involuntary because he did not have effective assistance of counsel, and he claims that the [ C]ourt should have granted his motion to substitute counsel and asked him if he wished to withdraw his guilty plea. We disagree. The [ C]ourt thoroughly inquired into [Petitioner]'s motion to substitute counsel and denied the motion only after determining that there was still sufficient attorney/client communication to permit [trial] counsel to present a cogent defense. *See United States v. Smith*,

> 640 F.3d 580, 588 (4th Cir. 2011) (discussing factors for evaluating motion to substitute counsel). We therefore conclude that the [ C]ourt did not err in denying [Petitioner]'s motion to substitute counsel and that [Petitioner] has not established that a lack of competent counsel resulted in an involuntary guilty plea.

Alston, 2022 WL 313843, at *3 (emphasis added).) Having unsuccessfully challenged that issue on direct appeal, Petitioner cannot re-litigate that matter via the instant Section 2255 Motion. See Dyess, 730 F.3d at 360 (citing United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009), United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004), and Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976)).

Petitioner disputes that his unsuccessful challenge on direct appeal of the knowing and voluntary character of his guilty plea forecloses Ground Two:

> Whether [Petitioner's] guilty plea and conviction were obtained in violation of the Sixth Amendment's requirement of effective assistance of counsel is a separate, distinct legal issue that the Fourth Circuit did not resolve in [his] direct appeal. The "Fifth Amendment's guarantee of due process" for a guilty plea "affords defendants a right distinct from the Sixth Amendment right to effective assistance of counsel." *United States v. Akinsade*, 686 F.3d 248, 255 (4th Cir. 2012); *Elmore v. Ozmint*, 661 F.3d 783, 789 n.1 (4th Cir. 2011) (Although "ineffective assistance claim and Fourteenth Amendment due process claim are premised on much of the same evidence," the "two claims are nonetheless distinct.").
>
> The [United States] Supreme Court rejected the [G]overnment's position in *Kimmelman v. Morrison*, 477 U.S. 365 (1986). In *Kimmelman*, the state made a virtually identical argument: that [the] petitioner's [ineffective assistance of counsel] claim was really just a defaulted Fourth Amendment claim "in Sixth Amendment

> guise," *id.* at 380, and simply "an attempt to litigate" the defaulted claim, *id.* at 373. The [Supreme] Court held that collateral review was available to protect the petitioner's "personal right to effective assistance of counsel" even if the underlying claim which counsel's error forfeited could not be addressed. *Id.* at 382-83; *id.* at 374 n.1 ("Respondent's Sixth Amendment claim is distinct from his Fourth Amendment claim and [thus] has never been defaulted.").
>
> Similarly, the Fourth Circuit directly rejected the [G]overnment's argument in *United States v. Carthorne*, 878 F.3d 458 (4th Cir. 2017). There, the defendant had challenged a sentencing error applying the career offender enhancement on appeal – and lost – and yet nonetheless successfully raised related [ineffective assistance of counsel] claims in his § 2255 motion.
>
> So here: the rejection of [Petitioner's] due process claim on direct appeal does not foreclose [his] § 2255 Sixth Amendment claims. And because the Fourth Circuit ordinarily declines to address the merits of ineffective assistance claims raised on direct appeal "unless counsel's ineffectiveness conclusively appears on the face of the record," those claims have not been litigated. *Glover*, 8 F.4th at 246.

(Docket Entry 58 at 6-7.) Petitioner's above-quoted arguments miss the mark.

In the first case cited by Petitioner, the Fourth Circuit granted a writ of coram nobis where trial counsel had misadvised the petitioner that a guilty plea to an embezzlement charge would not have deportation consequences, see Akinsade, 686 F.3d at 250, and the district court's admonishment during the Rule 11 colloquy that the guilty "plea *could* lead to deportation" did not qualify as sufficiently "specific and unequivocal as to the deportation consequences," id. at 254 (emphasis in original). In so holding, the Fourth Circuit noted that "[a] district court's duty to ensure

a knowing and voluntary plea arises from the Fifth Amendment's guarantee of due process and thus affords defendants a right distinct from the Sixth Amendment right to effective assistance of counsel," as well as that the court "ha[d] never suggested that the sufficient protection of one right automatically corrects any constitutional deficiency of the other." Id. at 255. Thus, the court did not address the issue here of whether unsuccessfully alleging on direct appeal that trial counsel's conduct rendered a guilty plea unknowing and involuntary bars a petitioner from asserting an ineffective assistance claim based on the same underlying conduct in a motion under Section 2255.

Similarly, the second case cited by Petitioner does not aid his cause because, in that case, the Fourth Circuit merely acknowledged that "[the petitioner]'s Sixth Amendment claim of ineffective assistance . . ., and his Fourteenth Amendment [due process] claim that the [s]tate suppressed exculpatory evidence and knowingly presented false testimony [both raised in a petition under 28 U.S.C. § 2254] . . . [we]re premised on much of the same evidence and, thus, discussed together," while also acknowledging that such "claims are nonetheless distinct, both in nature and in the requisite elements of proof," Elmore, 661 F.3d at 789 & n.1, and did not reach the issue in question here.

Petitioner's reliance on Kimmelman fares no better. In that case, the Supreme Court addressed "whether the restrictions on

federal habeas review of Fourth Amendment claims announced in *Stone v. Powell*, 428 U.S. 465 (1976), should be extended to Sixth Amendment claims of ineffective assistance of counsel where the principal allegation . . . is counsel's failure to file a timely motion to suppress." Kimmelman, 477 U.S. at 368. The Supreme Court concluded that the rule in Stone did not bar the petitioner's ineffective assistance claim premised on trial counsel's failure to file a motion to suppress because, "while [the petitioner]'s defaulted Fourth Amendment claim is one element of proof of his Sixth Amendment claim, the two claims have separate identities and reflect different constitutional values." Id. at 375. The Supreme Court simply did not reach the issue here, i.e., whether unsuccessfully challenging conduct on appeal bars an ineffective assistance claim on collateral review based on that same conduct.

Nor may Petitioner obtain relief based on Carthorne. In that case, the Fourth Circuit held that its prior decision on direct appeal that the district court did not plainly err in applying the career offender enhancement did not bar the petitioner's subsequent ineffective assistance claim in a motion under Section 2255 based on trial counsel's failure to object to that enhancement. See Carthorne, 878 F.3d at 464-66. Critically, however, in the direct appeal, the Fourth Circuit "h[e]ld that the district court erred in determining that [the petitioner]'s conviction for [assault on a police officer] categorically qualified as a crime of violence

under [the career offender enhancement]." United States v. Carthorne, 726 F.3d 503, 515-16 (4th Cir. 2013) (emphasis added). Thereafter, the court "turn[ed] to the second step of [the] plain error analysis to consider whether the district court's error was plain[, and ] conclude[d] that the district court's error was not so clear or obvious as to meet that high bar." Id. at 516. Under such circumstances, the finding of an error with respect to the district court's application of the career offender enhancement that did not "meet th[e] high bar" of plain error, id., did not preclude the petitioner's subsequent ineffective assistance claim based on his trial counsel's failure to object to the enhancement. See Carthorne, 878 F.3d at 464-66.

Here, although the Fourth Circuit "review[ed] the validity of [Petitioner's guilty] plea for plain error," Alston, 2022 WL 313843, at *2, that court (A) concluded that this Court did not commit any error with respect to the Rule 11 colloquy and its duty to ensure the knowing and voluntary nature of Petitioner's plea, and therefore (B) did not rely on the second step of the plain error analysis, i.e., whether any error qualified as plain, see id. at *3 ("[A] review of the plea transcript reveals that the [ C]ourt fully complied with Rule 11. This, too, 'raises a strong presumption that the plea is final and binding.'" (quoting United States v. Walker, 934 F.3d 375, 377 n.1 (4th Cir. 2019))). In light of that posture, the Fourth Circuit's finding on direct

appeal that Petitioner's plea qualified as knowing and voluntary precludes his instant ineffective assistance claim premised on the unknowing and involuntary nature of his plea. See Hines v. United States, No. 7:18CR132, 2022 WL 16936256, at *4 (E.D.N.C. Nov. 14, 2022) (unpublished) (finding that "[the petitioner] c[ould ]not use [S]ection 2255 to recharacterize [a] claim as an ineffective assistance of counsel claim and relitigate an argument that he raised and lost on direct appeal[,]" where "[a]ppellate counsel . . . [had] argued that the 276-month sentence on each count was improper and the Fourth Circuit directly addressed th[at] argument in its opinion" (citing Dyess, Roane, and Boeckenhaupt), appeal dismissed, No. 22-7453, 2023 WL 4075196 (4th Cir. Jun. 20, 2023) (unpublished); Baxton v. United States, No. 3:17CR134-5, 2022 WL 481790, at *9 (W.D.N.C. Feb. 16, 2022) (unpublished) ("On direct appeal, the Fourth Circuit found that . . . the Government presented ample evidence during the jury trial and the sentencing hearings that [the a]ppellants engaged in the attributed underlying racketeering activities . . . . There is no reason for the [c]ourt to revisit the issue in the instant proceeding under the guise of ineffective assistance of counsel." (internal quotation marks omitted) (citing Boeckenhaupt)); Suleitopa v. United States, No. CR-16-00168, 2020 WL 2061554, at *11 (D. Md. Apr. 28, 2020) (unpublished) (rejecting the petitioner's argument that "trial counsel was ineffective in failing to object to the prosecutor's

statement during rebuttal that [the petitioner] had been stripped of the presumption of innocence[,]" because, on direct appeal, and even applying plain error review, the Fourth Circuit had found that the prosecutor's remarks "did not prejudice the [petitioner,]" and, thus, "[the] petitioner 'w[ould] not be allowed to recast, under the guise of a collateral attack, questions fully considered' and decided on direct appeal" (some internal quotation marks omitted) (quoting Boeckenhaupt, 537 F.2d at 1183)).

Put simply, Boeckenhaupt and its progeny bar Petitioner's attempt to relitigate the knowing and voluntary nature of his guilty plea, and, thus, Ground Two fails.

Ground Three

Petitioner also asserts that his trial counsel provided "[i]neffective assistance for failing to raise Fourth Amendment challenges to the felony stop and search of the vehicle." (Docket Entry 48, ¶ 12(GROUND THREE).) In Petitioner's view, "[t]here were at least two meritorious challenges to the search and seizure: 1) [t]he evidence for arrest warrants and the BOLO was based on a false and misleading representation by police officers that they had obtained a partial license plate tag number from video surveillance of the firearm discharge incident[, and a]ll other evidence was unreliable, conflicting, and hearsay[, and] 2) [u]nder [Arizona v. Gant, 540 U.S. 963 (2003)], the search of the car was unreasonable because [Petitioner's] girlfriend and [Petitioner]

were detained and handcuffed away from the car so there was no concern for officer safety." (Id., ¶ 12(GROUND THREE)(a) (dash omitted).)[4] As explained in more detail below, those contentions fall short.

To begin, when (as in this case),

> a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . .

Tollett v. Henderson, 411 U.S. 258, 267 (1973) (emphasis added); see also id. ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.").

A defendant pleads guilty voluntarily when he possesses "aware[ness] of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own

---

[4] Petitioner's Reply elaborates that "a motion to suppress plainly would have had some substance" (Docket Entry 58 at 19 (internal quotation marks omitted)), based upon 1) the arresting officers' failure to mention or present Petitioner with felony arrest warrants related to the shooting incident as a justification for the stop (see id. at 18), 2) the hearsay nature of the victim's mother's statements about the identity of the shooter (see id. at 15-16), 3) the victim's identification of the shooter as "Jock," "which the Court determined the [G]overnment failed to prove was the same person [as Petitioner]" (id. at 16), and the victim's lack of awareness of a vehicle or second person involved in the shooting (see id.), 4) the investigating officers' failure to identify the driver of the vehicle involved in the shooting (see id.), 5) the unreliability of the statements of the victim and his mother as coerced by officers' threats to evict the victim's mother (see id.), 6) Officer Galbo's false statement that he obtained the partial license plate "FBS" on the vehicle involved in the shooting from the Ray Warren Homes surveillance footage (id. at 18), 7) the inability of the victim's mother to accurately describe the make and model of Petitioner's girlfriend's vehicle (see id. at 16), and 8) the poor quality of the surveillance footage from Ray Warren Homes which "showed no firearm, no altercation, and no shot fired" (id. at 17).

counsel . . . [, and received no] induce[ment] by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or . . . promises that are by their nature improper . . . (e.g. bribes)." Brady v. United States, 397 U.S. 742, 755 (1970) (internal quotation marks omitted). To make an intelligent guilty plea, a defendant must enjoy "control of his mental faculties," id. at 756, and must know "the nature of the charge against him," id. "A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . ." Tollett, 411 U.S. at 267; see also United States v. Broce, 488 U.S. 563, 572 (1989) ("[A] counseled defendant may not make a collateral attack on a guilty plea on the allegation that he misjudged the admissibility of [evidence]."); Thomas v. United States, Nos. 5:15CR138, 5:16CV819, 2019 WL 2617062, at *3 (E.D.N.C. June 26, 2019) (unpublished) ("The fact that counsel . . . failed to file a motion to suppress . . . does not implicate the voluntariness of [the] petitioner's plea.").

Given the record's conclusive showing that Petitioner pleaded guilty intelligently and voluntarily (see Docket Entry 37 at 4-10, 13-31 (documenting that, while under oath, Petitioner entered intelligent and voluntary guilty plea, pursuant to written Plea Agreement he fully understood, just as Judge Osteen found at that

time)),[5] Petitioner's ineffective assistance claim premised on trial counsel's failure to file a motion to suppress (Docket Entry 48, ¶ 12(GROUND THREE)(a)) fails as a matter of law under Tollett. See, e.g., United States v. Austin, No. 96-6121, 87 F.3d 1309 (table), 1996 WL 295278, at *1 (4th Cir. June 5, 1996) (unpublished) ("[The petitioner] raised [] claims in his habeas motion[] that his counsel was ineffective for failing to move for suppression of evidence . . . . [Those] allegations state non-jurisdictional claims antecedent to the guilty plea. They were waived by the guilty plea." (citing Tollett) (internal numbering omitted)); Bryant v. United States, Nos. 4:18CR437, 4:19CV2692, 2020 WL 869965, at *3 (D.S.C. Feb. 21, 2020) (unpublished) (holding that "claim [for] counsel fail[ing] to file a motion to suppress . . . is barred by *Tollett*"), appeal dismissed, 826 F. App'x 291 (4th Cir. 2020); Fuller v. United States, Nos. 5:15CR16, 5:16CV273,

[5] "[Such] findings made by the judge accepting the plea[] constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Coordinately, "[Petitioner's] solemn declarations in open court affirming [his P]lea [A]greement carry a strong presumption of verity, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal brackets, citations, ellipses, and quotation marks omitted). "Thus, in the absence of extraordinary circumstances, . . . [the C]ourt should, without holding an evidentiary hearing, dismiss any [collateral claim] that necessarily relies on allegations that contradict [Petitioner's] sworn statements." Id. at 221-22. Petitioner has proved no extraordinary circumstances of that sort, as the Fourth Circuit found on direct appeal, see Alston, 2022 WL 313843, at *3 ("Nothing occurred [during the plea hearing] to suggest that [Petitioner] was incompetent, dissatisfied with [his trial] counsel, or confused about the nature of the charge. Accordingly, the mere fact that [Petitioner] hesitated or asked questions is far from the 'clear and convincing evidence' required to undermine the sworn statements he made during the Rule 11 hearing." (quoting Fields, 956 F.2d at 1299)).

2017 WL 1378109, at *3 (E.D.N.C. Apr. 12, 2017) (unpublished) ("[The petitioner's] ineffective-assistance claim for failing to file a motion to suppress . . . fails because he pleaded guilty." (citing Tollett)); Matthew v. United States, Nos. 3:06CR16, 3:13CV111, 2015 WL 13573975, at *3 (W.D.N.C. Oct. 8, 2015) (unpublished) ("[B]y entering a knowing and voluntary guilty plea, [the p]etitioner waived his right to argue that his attorney was ineffective in failing to file a motion to suppress." (citing Tollett)), appeal dismissed, 635 F. App'x 104 (4th Cir. 2016); Hawk v. United States, Nos. 1:08CR413, 1:12CV361, 2015 WL 13567551, at *1-2 (M.D.N.C. May 27, 2015) (unpublished) (Webster, M.J.) (citing Tollett in opining that the petitioner "may not raise" claims "alleg[ing] ineffective assistance of counsel as it relates to counsel's failure to request a suppression hearing," given "valid guilty plea"), recommendation adopted, 2015 WL 13567416 (M.D.N.C. June 30, 2015) (unpublished) (Beaty, S.J.); Brown v. United States, Nos. 3:08CR259, 3:11CV99, 2012 WL 5265798, at *10 (S.D.W. Va. Aug. 17, 2012) (unpublished) ("[The petitioner's] claim of ineffective assistance based on counsel's failure to file a motion to suppress is clearly premised on an alleged constitutional violation that occurred prior to his guilty plea and was unrelated to it. Consequently, [that] claim is foreclosed from review." (citing Tollett)), recommendation adopted, 2012 WL 5265915 (S.D.W. Va. Oct. 24, 2012) (unpublished); contra Mahrt v. Beard, 849 F.3d 1164, 1171

(9th Cir. 2017) ("conclud[ing] that [suppression-related] ineffective assistance of counsel claim is allowed under *Tollett*").

Alternatively, Petitioner cannot prevail on his ineffective assistance claim because he has not come forward with evidence sufficient to show (A) that his trial counsel acted unreasonably by opting not to file a motion to suppress, and (B) "that there is a reasonable probability that, but for [his] counsel's errors, [Petitioner] would not have pleaded guilty and would have insisted on going to trial," Hill, 474 U.S. at 59. Focusing first on the second of those two Strickland elements, Petitioner's entire showing of prejudice consists of these two conclusory statements: "without counsel's errors, there's a reasonable probability that the outcome of the criminal proceedings would have been different" (Docket Entry 48 at 26), and, "even if a motion to suppress had been unsuccessful, being informed about the frailty of the [G]overnment's case would have changed [his] decision to plead guilty" (Docket Entry 58 at 20). That showing does not suffice. See, e.g., Lee v. United States, 582 U.S. 357, 369 (2017) ("Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." (italics omitted)); United States v. Basham, 789 F.3d 358, 375 (4th Cir. 2015) ("[T]o succeed on his ineffective assistance claims, [the petitioner] is not entitled to satisfy the prejudice requirement through rank speculation . . . ." (internal

quotation marks omitted)); Arnold v. Superintendent SCI Frackville, Civ. Action No. 16-5539, 2017 WL 10152449, at *11 (E.D. Pa. July 25, 2017) (unpublished) ("Although [the petitioner] makes a conclusory statement that, had [his counsel] filed a motion to suppress, [the petitioner] would not have pleaded guilty, mere allegations by a defendant that he would have pleaded differently and insisted on going to trial are insufficient to establish prejudice." (internal brackets and quotation marks omitted), recommendation adopted, 322 F. Supp. 3d 621 (E.D. Pa. 2018), certificate of appealability denied, C.A. No. 19-2963, 2020 WL 897605 (3d Cir. Feb. 6, 2020) (unpublished); Weber v. Secretary, Dep't of Corr., No. 5:09CV374, 2013 WL 626978, at *7 (N.D. Fla. Jan. 23, 2013) (unpublished) (recommending denial of relief under Strickland where "[the p]etitioner provided no specific facts to support his conclusory allegation that[,] if counsel had filed a motion to suppress, [the petitioner] would not have pled no contest and would have insisted on going to trial"), recommendation adopted, 2013 WL 627058 (N.D. Fla. Feb. 20, 2013) (unpublished).

Petitioner's attempt to show deficient performance by trial counsel fares no better, as Petitioner has not shown that a motion to suppress evidence arising from the stop and search of the vehicle held any likelihood of success. Concerning probable cause for the stop and search, the record does not support Petitioner's claim that Officer Galbo falsified his testimony that he saw a

partial license plate "FBS" on the Ray Warren Homes surveillance camera footage (Docket Entry 40 at 46). Although Officer Emerson stated in her case report that she could not "obtain the license plate number for the vehicle that [Petitioner] was in" from viewing the surveillance video (Docket Entry 48 at 34), she testified at the sentencing hearing that she and Officer Galbo "weren't able to get a clear license plate" when viewing the "security footage" (Docket Entry 40 at 17 (emphasis added)). In turn, Officer Galbo did not address his ability to see the license plate on the video in his case report (see Docket Entry 48 at 37), and initially testified at the sentencing hearing that Officer Emerson, upon watching the footage, told Officer Galbo that the vehicle in the footage "looked similar" to Petitioner's girlfriend's vehicle and "that was the most we got out of watching the footage" (Docket Entry 40 at 40). However, Officer Galbo later responded to the Court's question, "[Y]ou all could not identify the license tag?" as follows: "It was a partial. It was FBS." (Id. at 46.) That evidence wholly fails to demonstrate that Officer Galbo testified falsely when he stated that he could make out a partial license tag on the video.

Petitioner additionally has raised multiple challenges to the admissibility and reliability of the evidence supporting probable cause. (See Docket Entry 48 at 21-24; see also Docket Entry 58 at 15-19.) For example, Petitioner contends that "[t]he only evidence

[Officer] Galbo would have included in an affidavit supporting probable cause was from the double or triple hearsay statement of [the victim's mother] - not an actual witness to the events - who purportedly told Officer Emerson that her son . . . told her at some point that 'Rezell' had been involved [in the shooting]." (Docket Entry 58 at 15.) Such arguments entitle Petitioner to no relief. To begin, the Court at sentencing "credit[ed] the law enforcement officers' testimony" and "f[ound] it believable." (Docket Entry 40 at 71.) The Court also "accept[ed the victim's mother's] hearsay statements as having sufficient indicia of reliability[,]" because the Court "had the video" and "could watch [her] interaction with law enforcement at the time of the interview" and "didn't see any indication that [she] appeared to be speaking with the officers in a reserved manner or some manner that would suggest she was falsifying information." (Id.)

In any event, the record contains numerous facts establishing probable cause for the officers to obtain the arrest warrants and to issue the BOLO for Petitioner, including 1) the partial tag "FBS" on the Ray Warren Homes surveillance video ultimately matching the full license plate of Petitioner's girlfriend's vehicle (see id. at 41, 46, 54), 2) the victim's mother's statements (that the Court found she made in an "excited" state (id. at 71-72)) that her son identified "Rezell" as the shooter (id. at 12) (which the Court also found the victim made while

"relatively excited" (id. at 72)), that "Rezell" and her son "grew up together" and "is like a brother to [her] son" (Docket Entry 48 at 32), that "Rezell" lived with his girlfriend just a few houses down (Docket Entry 40 at 13; Docket Entry 48 at 33), and that "Rezell" drove his girlfriend's dark blue car (Docket Entry 40 at 13, 17; Docket Entry 48 at 33), and 3) Officer Emerson's familiarity with Petitioner, his girlfriend, and his girlfriend's car due to a shooting incident involving them a few months earlier (see Docket Entry 40 at 13, 40, 43, 46; Docket Entry 48 at 34).

With regards to the stop and search itself, the record shows that officers initially stopped Petitioner's vehicle based on active felony warrants for Petitioner's arrest related to the shooting hours earlier and the BOLO. (See Docket Entry 40 at 50-51; Docket Entry 48 at 40.) Those officers performed a "felony stop" by approaching the suspect vehicle with their "guns out" and "order[ing] the occupants of the vehicle out . . . so [officers] c[ould] detain [the occupants] safely for everybody." (Docket Entry 40 at 53.) Notably, Petitioner's BOLO warned officers to "consider [Petitioner] to be armed and dangerous" and to "use extreme caution if [the officers] come in contact with [Petitioner] or [the suspect] vehicle." (Docket Entry 48 at 40.) Moreover, the officers based their search of the vehicle on a clear plastic baggie of marijuana in plain view in the passenger-side door handle of the vehicle (see Docket Entry 40 at 55), and, thus, the officers

did not conduct an overbroad or unreasonable search incident to arrest under Arizona v. Gant.

In sum, the Court should deny relief on Ground Three.

Ground Four

Lastly, in Ground Four, Petitioner asserts a claim of "[i]neffective assistance of counsel in the sentencing phase" (Docket Entry 48, ¶ 12(GROUND FOUR)), in that "[t]rial counsel failed to challenge the 4-level enhancement [under U.S.S.G. § 2K2.1(b)(6)(B)] for committing the North Carolina felony of assault with a deadly weapon inflicting serious injury," "failed to challenge the [G]overnment witness's false testimony about the partial tag[,]" and "failed to conduct legal research and investigation or raise other legal and factual challenges to [the] Guidelines sentencing range calculation" (id., ¶ 12(GROUND FOUR)(a)). In particular, Petitioner maintains that his trial counsel should have argued that "[n]o evidence supported the 'serious injury' element" of the North Carolina felony at issue (id. at 27; see also Docket Entry 58 at 20-21), as well as "object[ed] on the grounds that the alleged assault was not relevant conduct to the firearm [sic] possession[,]" because "[t]he assault did not occur **during** the commission of the conduct leading to the federal charge[ ,]" "did not occur in preparation for that offense, or in the course of attempting to avoid detection for that

offense" (Docket Entry 48 at 27 (emphasis in original)). Ground Four fails on multiple fronts.

First, and most significantly, Petitioner challenged the Court's application of the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) on direct appeal, and the Fourth Circuit found that claim "meritless," Alston, 2022 WL 313843, at *5. As such, Petitioner cannot repackage that claim as an ineffective assistance of counsel claim in the instant Section 2255 Motion. See Dyess, 730 F.3d at 360, Linder, 552 F.3d at 396, Roane, 378 F.3d at 396 n.7, and Boeckenhaupt, 537 F.2d at 1183.

Second, Petitioner's trial counsel did object to the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), in response to the draft Presentence Investigation Report (see Docket Entry 18 at 2), vigorously cross-examined two of the Government's witnesses at Petitioner's sentencing hearing (see Docket Entry 40 at 18-25, 41-48), and argued at length that the enhancement should not apply (see id. at 57-65). And, although the Court ultimately applied the enhancement (see id. at 69), the Court found the matter a "close [] issue" (id.), and indicated "[it was] really not convinced that [Petitioner] intended for it to end up the way that it did[,]" as well as that "[the shooting was] more . . . like a felony that was committed in the heat of passion than it [wa]s a premeditated intent to go shoot [Petitioner's] friend" (id. at 76; see also id. at 84 (remarking that the four-level enhancement "[was] properly

applied but . . . was likely the product of two friends getting into an argument and having unfortunate consequences”)).

Third, Petitioner’s contention that his trial counsel should have “object[ed] on the grounds that the alleged assault was not relevant conduct to the firearm [sic] possession” (Docket Entry 48 at 28) falls short. Petitioner raised that argument on direct appeal, and the Fourth Circuit rejected it. See Alston, 2022 WL 313843, at *5. As such, Petitioner cannot raise that assertion here rebundled as an ineffective assistance claim. See Dyess, 730 F.3d at 360, Linder, 552 F.3d at 396, Roane, 378 F.3d at 396 n.7, and Boeckenhaupt, 537 F.2d at 1183.[6]

Fourth, as discussed above in the context of Ground Three, Petitioner has entirely failed to show that Officer Galbo “falsified” his testimony that he could see the partial license plate “FBS” on the surveillance video (Docket Entry 40 at 46). Accordingly, his trial counsel could not have performed unreasonably by failing to challenge that testimony. See Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) (“[C]ounsel [i]s not constitutionally ineffective in failing to [take action

[6] Petitioner also argues that his trial counsel should have challenged whether the shooting of the victim’s foot established the “serious injury” element of the state law felony assault with a deadly weapon inflicting serious injury as required for the four-level enhancement to apply. (See Docket Entry 48 at 27-28; see also Docket Entry 58 at 20-21.) Again, Petitioner challenged the application of the enhancement on direct appeal, specifically arguing that “there was insufficient evidence that the shooting constituted a felony,” and the Fourth Circuit found that assertion “meritless,” Alston, 2022 WL 313843, at *5. Petitioner, therefore, cannot bring that claim here in the guise of an ineffective assistance claim. See Dyess, 730 F.3d at 360, Linder, 552 F.3d at 396, Roane, 378 F.3d at 396 n.7, and Boeckenhaupt, 537 F.2d at 1183.

if] . . . it would have been futile for counsel to have done so . . . .”).

Fifth, Petitioner has not developed his conclusory assertions about his trial counsel’s “fail[ure] to conduct legal research and investigation or raise other legal and factual challenges to [the] Guidelines sentencing range calculation” (Docket Entry 48, ¶ 12(GROUND FOUR)(a); see also id. at 27-31 (failing to provide additional supporting facts or argument); Docket Entry 58 at 20-22 (not elaborating on that allegation)), and, thus, those assertions fail as “vague, conclusory, speculative, and unsupported,” Cabrera, 2014 WL 6386902, at *9; see also Dyess, 730 F.3d at 359 (“[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.” (internal quotation marks omitted)).

Sixth, even assuming, arguendo, that Petitioner could establish deficient performance by his trial counsel relating to his handling of the four-level enhancement, Petitioner could not establish resulting prejudice, because the Court varied downward from the Guidelines range of “92 to 115 months” (Docket Entry 40 at 75; see also Docket Entry 26, ¶ 74 (PSR reflecting “[G]uideline imprisonment range [a]s 92 months to 115 months” founded on Petitioner’s “total offense level of 23 and a criminal history category of VI”)) to a sentence of 84 months - a sentence the Court stated it would have issued in the absence of the four-level

enhancement (see Docket Entry 40 at 85). Thus, Petitioner cannot show a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error, Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (quoting Strickland, 466 U.S. at 694); see also Alston, 2022 WL 313843, at *5 (ruling on Petitioner's direct appeal that, even if the Court had erred in applying four-level enhancement, "such error would have been harmless because, even without the enhancement, it is clear from the record that the [ C]ourt would have imposed the same sentence and that the sentence would have been reasonable").

In short, Ground Four does not establish a basis for habeas relief.

Motion to Amend

Prior to the Government's Response, Petitioner filed his Motion to Amend seeking to add a fifth Ground for Relief based upon "[p]rosecutorial misconduct" arising out of the Government "allow[ing] misleading and false testimony [at the sentencing hearing by Officer Galbo that he could see a partial license plate on the surveillance footage] to stand and fail[ing] to correct it." (Docket Entry 53 at 1.) In its Response, the Government argues that such a claim would qualify as "untimely under § 2255(f)(1) and barred by the statute of limitations which ran on June 20, 2023, and that "[n]o other provision applies to extend [Petitioner's] deadline." (Docket Entry 54 at 22 n.10.) In Petitioner's Reply,

he contends that "the [M]otion to [A]mend was properly filed on December 27, 2023" (Docket Entry 58 at 23), as well as that, "[his] prosecutorial misconduct claim involves the same core facts and occurrences included in [his] original [Section] 2255 [M]otion, and thus, [his] amendment would not be an untimely new 'claim'" (id. (citing, inter alia, Fed. R. Civ. P. 15(c)(1)(B))).

Petitioner could amend his Section 2255 Motion "once as a matter of course no later than 21 days after serving {the Section 2255 Motion], or . . . 21 days after service of a responsive pleading [by the Government]." Fed. R. Civ. P. 15(a)(1) (colon and paragraph lettering omitted) (emphasis added). As Petitioner submitted his Motion to Amend to prison authorities on December 27, 2023 (see Docket Entry 53 at 1), more than 21 days after serving the Section 2255 Motion on June 15, 2023 (see Docket Entry 48 at 12), but prior to service of the Government's Response (see Docket Entry 54 at 24 (reflecting service of Government's Response on Petitioner on January 17, 2024)), he needed neither the Government's consent nor the Court's leave to amend his Section 2255 Motion in this fashion, compare Fed. R. Civ. P. 15(a)(1), with Fed. R. Civ. P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.").

As to timeliness, for claims under Section 2255:

> The [one-year] limitation period shall run from the latest of –

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Under Section 2255(f)(1), Petitioner's one-year period to file a claim via Section 2255 commenced on or about June 20, 2022, upon the expiration of the 90-day period after the Fourth Circuit denied Petitioner's petition for rehearing and rehearing en banc on March 22, 2022 (see Docket Entry 46 at 1) to file a petition for a writ of certiorari with the United States Supreme Court (see Docket Entry 48, ¶ 9(g) (conceding that Petitioner did not file a certiorari petition with Supreme Court)). See Clay v. United States, 537 U.S. 522, 532 (2003) ("[F]or federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires."); see also S. Ct. R. 13.1 ("[A] petition for a writ of certiorari to review a judgment in any case . . . entered by a . . . United States court of appeals . . . is timely when it is filed with the

Clerk of th[e United States Supreme] Court within 90 days after entry of the judgment."); S. Ct. R. 13.3 ("The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate . . . . But if a petition for rehearing is timely filed in the lower court by any party, . . . the time to file the petition for a writ of certiorari . . . runs from the date of the denial of rehearing[.]")). The statute of limitations under Section 2255(f)(1) thereafter expired one year later on June 20, 2023,[7] but Petitioner did not submit his Motion to Amend to prison authorities until December 27, 2023 (see Docket Entry 53 at 1), over six months out of time. Moreover, no other deadline under Section 2255(f) applies, as Petitioner's proposed new claim neither raises a right newly recognized by the Supreme Court, nor invokes a governmental impediment that prevented him from presenting his Motion to Amend earlier, and Petitioner would have known of the facts supporting his new claim as of the date of his sentencing hearing on November 30, 2018 (see Docket Entry 40 at 1).

Accordingly, the time-bar defeats Petitioner's proposed new claim, unless it relates back to his Section 2255 Motion. See

[7] Significantly, in the Section 2255 Motion, Petitioner admitted that the applicable statute of limitations expired on "June 20, 2023." (Docket Entry 48, ¶ 18.)

United States v. Pittman, 209 F.3d 314, 318 (4th Cir. 2000).[8] "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B); see also Pittman, 209 F.3d at 317-18 (applying said Rule, then codified at Federal Rule of Civil Procedure 15(c)(2), in Section 2255 context); United States v. Craycraft, 167 F.3d 451, 457 (8th Cir. 1999) (declining to find new claim related back to original petition, because new claim "[wa]s a separate occurrence in both time and type" (emphasis added)).[9]

Although, arguably, the time component of his new allegations that the Government knowingly allowed Officer Galbo's "false"

[8] The Court could construe Petitioner's assertion that he "was late putting in []his [M]otion [to Amend} due to the fact that [his prison] block was on modified lockdown . . . since [F]riday Dec[ember] 22, 2023" and "[he] did not have access to [his] own email, so [he] used another inmate's email to keep in contact with [Petitioner's] lawyer" (Docket Entry 53 at 2) as an attempt to argue that equitable tolling should apply to excuse the untimeliness of the proposed new claim in his Motion to Amend. See Holland v. Florida, 560 U.S. 631, 649 (2010) (holding that equitable tolling requires proof of two elements: "(1) that [Petitioner] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."). That attempt, however, would fail for two reasons. First, prison lockdowns constitute ordinary conditions of confinement, not extraordinary circumstances. See, e.g., Allen v. Johnson, 602 F. Supp. 2d 724, 727-28 (E.D. Va. 2009) (holding that "lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances" warranting equitable tolling), appeal dismissed, 396 F. App'x 46 (4th Cir. 2010). Second, even assuming lockdowns constituted grounds for equitable tolling, Petitioner admits that the lockdown began on December 22, 2023, which occurred over six months after his one-year limitations period under Section 2255(f)(1) had already run.

[9] As in Pittman, "[t]he other circumstances for relation back in Rule 15(c) are not applicable to this case." Pittman, 209 F.3d at 317 n.2; see also Fed. R. Civ. P. 15(c)(1)(A) & (C) (allowing relation-back where statutory authority so dictates and where amendment simply involves non-prejudicial change of party to correct mistaken identity, respectively).

testimony at the sentencing hearing appears the same as his assertion in Ground Four that his trial counsel rendered ineffective assistance by failing to challenge Officer Galbo's "false" testimony at the sentencing hearing, the proposed new claim asserts a claim that differs in type - prosecutorial misconduct versus ineffective assistance of trial counsel. See Craycraft, 167 F.3d at 457 ("We cannot say that his original petition would provide notice of such a different sort of theory."). Regardless, even if the Court found that Petitioner's proposed new claim related back to the allegations in Ground Four, such a claim fails on the merits. As discussed above in connection with both Grounds Three and Four, Petitioner has not shown that Officer Galbo falsified his testimony that he could read the partial license tag "FBS" on the Ray Warren Homes surveillance footage (Docket Entry 40 at 46).

In light of the foregoing discussion, the Court should deny Petitioner's proposed new claim as both untimely and meritless.

## CONCLUSION

Petitioner has not shown entitlement to habeas relief.

**IT IS THEREFORE RECOMMENDED** that the Section 2255 Motion (Docket Entry 48), as amended by the Motion to Amend (Docket Entry 53), be denied without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 18, 2026